UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASSANDRA MOORE
O/B/O R.T.B., a minor,
    Plaintiff,

v.                                          Case No.: 4:24cv513/TKW/ZCB

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is a Social Security appeal filed under 42 U.S.C. § 405(g). Plaintiff Cassandra Moore, on behalf of her minor daughter R.T.B., seeks judicial review of the Social Security Commissioner's decision denying disability benefits. Because substantial evidence supports the Commissioner's decision, it should be affirmed.

### I. Procedural History

Plaintiff applied for supplemental security income on behalf of her minor child R.T.B., alleging that R.T.B. became disabled on January 1, 2018. (Tr. 17, 236-46).[1] The Social Security Administration denied her

---

[1] Citations to the administrative record filed by the Commissioner are designated as "Tr." The page numbers cited are those found on the

1

application. (Tr. 17, 117-125, 136-42). Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on May 7, 2024. (Tr. 38-62). The ALJ issued a written decision on June 7, 2024, finding Plaintiff was not disabled. (Tr. 17-31). The Appeals Council denied Plaintiff's request for review. (Tr. 1-11). Thus, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff has timely requested judicial review under 42 U.S.C. § 405(g).

## II. The Social Security Administration's Sequential Evaluation Process for Childhood Disability Claims

The Social Security Administration uses a three-step sequential process to determine if a child is disabled. *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 645 (11th Cir. 2012); 20 C.F.R. § 416.924. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If so, then the child is not disabled. *Id.* Second, if the child is not engaged in substantial gainful activity, then the Commissioner will determine whether the child has a severe impairment. *Id.* § 416.924(c). The child must have a severe impairment to be disabled. *Id.* Third, the Commissioner determines

---

bottom right corner of each page of the transcript, rather than the numbers that were assigned by the Court's electronic docketing system.

whether the child's impairment or combination of impairments meets, is medically equal to, or functionally equal to an impairment listed in Appendix 1 or 20 C.F.R. part 404, subpart P.  20 C.F.R. §§ 416.924(d), 416.925.  If the answer is yes, then the child is disabled. 20 C.F.R. § 416.924(d)(1).

### III.   The ALJ's Decision

Here, the ALJ found at step one that R.T.B. had not engaged in substantial gainful activity since the application date.  (Tr. 18, Finding 2).  At step two, the ALJ found that R.T.B. suffered from the following severe impairments: "scoliosis, asthma, depression, anxiety, and attention deficit hyperactivity disorder (ADHD)."  (Tr. 18, Finding 3).

At step three, the ALJ determined that R.T.B. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19-20, Findings 4 & 5).  Based on these findings, the ALJ concluded that R.T.B. was not disabled.  (Tr. 31, Finding 6).

3

## IV.  Standard of Review

When this Court reviews a Social Security ALJ's decision, the question is not whether the Court would have reached the same conclusion had it been in the ALJ's shoes.  Instead, the Court must "give substantial deference" to the ALJ's decision.  *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005).  Thus, this Court's task is limited to determining whether the ALJ's decision was "supported by substantial evidence and based on proper legal standards."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

The substantial evidence standard is "not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  It requires "more than a mere scintilla, but less than a preponderance."  *Dyer*, 395 F.3d at 1210 (cleaned up).  This means that the Court should uphold the ALJ's decision if it is "supported by substantial evidence . . ., even if the proof preponderates against it."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (cleaned up).  When conducting the substantial evidence review, the Court does not "decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.  *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (cleaned up).

## V. Discussion

Where—as here—an ALJ finds that a child's impairments do not meet or equal an impairment listed in Part 404, Subpart P, Appendix 1, the ALJ must evaluate whether the child's limitations functionally equal one of the listed impairments. 20 C.F.R. § 426.926a. An impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 426.926a(a), (d). The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

A "marked" limitation is defined as a limitation that "interferes seriously with [the] ability to independently initiate, sustain, or complete activities," and is "more than moderate." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is reserved for the "worst limitations" and is defined as a limitation that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities," but "does not necessarily mean a total lack or loss of ability to function." 20 C.F.R. §

5

416.926a(e)(3)(i). In evaluating the severity of an impairment within the six domains, the child's independent ability to function is to be compared with other children her age who do not have impairments. 20 C.F.R. § 416.924a(b)(3).

In this case, the ALJ determined that R.T.B. had "less than a marked" limitation in all six functional domains. (Tr. 21). Plaintiff argues the ALJ erred by not properly weighing the medical opinion of Nurse Practitioner (NP) Anderson. NP Anderson was a provider at Florida Therapy Services who opined that R.T.B. had "marked" limitations in the domains of attending and completing tasks and interacting and relating with others. (Doc. 11 at 7; Tr. 919).

When determining the weight to give a medical opinion, an ALJ must consider the following: (1) the opinion's supportability or the relevance of the objective evidence to the opinion; (2) the opinion's consistency with the objective evidence; (3) the medical professional's relationship with Plaintiff; (4) the professional's specialization; and (5) other factors, such as the medical professional's familiarity with other record evidence. 20 C.F.R. § 416.920c(c). The first two factors are the most important. *Id.* § 416.920c(b)(2). And the ALJ "must state with

6

particularity the weight given to different medical opinions and the reasons" for that weight. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). An ALJ is "not required to give any specific evidentiary weight to treating physicians' opinions." *Adams v. Soc. Sec. Admin.*, No. 23-11233, 2024 WL 2846726, at *2 (11th Cir. June 5, 2024).

Here, the ALJ determined that NP Anderson's opinion was unpersuasive. In reaching that conclusion, the ALJ found NP Anderson's opinion to be inconsistent with the record. (Tr. 30). Specifically, the ALJ found NP Anderson's opinion inconsistent "with treatment records that reflect essentially unremarkable mental status examinations with some instances of abnormal mood and attention, improvement with medication adjustments, and lack of IEP for learning difficulties." (*Id.*).

Contrary to Plaintiff's argument, there is substantial evidence to support the ALJ's evaluation of NP Anderson's opinion. For example, there is evidence in the record of unremarkable findings on Plaintiff's mental status examinations at Florida Therapy Services. During her initial intake exam, the treatment notes reflect that R.T.B.'s social functioning, self-care functioning, motor skills, sensory skills, affective expression, and language utilization were all in normal limits. (Tr. 1205).

7

At some other follow-up appointments her mood was found to be good and her affect stable. (Tr. 928, 951, 975, 1222, 1258, 1271, 1282, 1307, 1316, 1326). She routinely was found to be polite and cooperative, her grooming was appropriate, and she was alert and oriented. (Tr. 894, 906, 928, 939, 940, 951, 962, 974, 975, 1222, 1234, 1246, 1258, 1271, 1282, 1294, 1307, 1316, 1325, 1326). Her rate of speech was consistently normal and thought process logical. (Tr. 895, 907, 928, 929, 940, 951, 952, 962, 963, 975, 1223, 1235, 1247, 1259, 1271, 1272, 1283, 1295, 1307, 1308, 1316, 1326). She often denied delusions, hallucinations, thoughts of self-harm, and aggression. (Tr. 895, 907, 929, 941, 952, 963, 976, 1223, 1235, 1247, 1259, 1272, 1283, 1295, 1308, 1317, 1327). About fifty percent of the time, her attention and concentration were normal (Tr. 930, 942, 953, 964, 1260, 1273, 1284, 1296), while the other fifty percent of the time she had easy distractibility or a short attention span (Tr. 896, 908, 977, 1224, 1236, 1248, 1309, 1318, 1328). Her insight and judgment were often found to be fair or without impairment, and she could explain recent and remote events and recall current events. (Tr. 896, 908, 930, 941, 942, 953, 964, 976, 977, 1224, 1236, 1248, 1260, 1273, 1284, 1296, 1309, 1318, 1328). Her language and fund of knowledge were routinely

found to be normal. (Tr. 897, 909, 930, 942, 953, 964, 977, 1225, 1236, 1249, 1260, 1273, 1285, 1297, 1309, 1318).

There is also evidence that R.T.B.'s symptoms improved with proper medication. (Tr. 922, 933, 945, 956); *see also* (Tr. 1312 (noting R.T.B. stated that she saw improvement with mood when taking medication as directed)). Finally, no individualized educational plan (IEP) was implemented for R.T.B. at her school, which the ALJ reasonably found inconsistent with NP Anderson's opinion that she had a "marked" limitation in attending and completing tasks and interacting and relating with others. (Tr. 30, 56).

Moreover, substantial evidence in the record supports the ALJ's ultimate finding that R.T.B. was not disabled. At the initial determination level, state agency medical consultant William Prather, M.D., found that R.T.B. had "less than marked" limitations in the domain health and physical wellbeing and "no limitations" in the remaining five domains. (Tr. 94-95). At the reconsideration determination level, state agency consultants Christine Booth, M.D., and Jessy Sadonik, Psy.D., found that R.T.B. had "no limitations" in moving about and manipulating

9

objects and "less than marked" limitations in all other domains. (Tr. 107-109).

Additionally, R.T.B.'s teachers did not see serious problems in her functioning. R.T.B.'s fourth-grade teacher, J. Noble, completed a Teacher Questionnaire where she was asked to rate the seriousness of R.T.B.'s impairments compared to same-aged children without impairments. (Tr. 311-18). Ms. Noble was provided with a scale of one to five, with one meaning the child had "no problems" and five meaning the child had "a very serious problem." (Tr. 312). Ms. Noble indicated that none of R.T.B.'s impairments caused more than "an obvious problem" (a three rating on the scale) compared to other same-aged children without impairments.[2] (Tr. 312-16). R.T.B.'s fifth-grade teacher, Rebecca Gonzalez, similarly did not rate any areas of functioning as more than a three rating or more than "an obvious problem." (Tr. 339-46). Indeed,

---

[2] Plaintiff relies on Ms. Noble's questionnaire, arguing that it is consistent with NP Anderson's opinion. (Doc. 11 at 10-11). But it is unclear how Ms. Noble's opinion that R.T.B. had "an obvious problem," but no "serious problems," in attending and completing tasks and interacting and relating with others is consistent with NP Anderson's opinion that R.T.B. had "marked limitations" that "interferes seriously" with R.T.B.'s ability to function in those domains. 20 C.F.R. § 416.926a(e)(2)(i).

10

Ms. Gonzales only found R.T.B. had "an obvious problem" (three rating) in the area of "reading and comprehending written material." (Tr. 340). For all other areas of functioning, she stated R.T.B. had "no problem" (a one rating) or only "a slight problem" (a two rating). (Tr. 340-44).

Plaintiff argues that the ALJ's conclusion regarding NP Anderson's opinion was erroneous because the ALJ offered "no citations to the record in support of [his] assertion, appearing instead to refer to summaries of evidence elsewhere in the decision." (Doc. 11 at 9). But the ALJ was not required to repeat his previous conclusions about the medical evidence in the paragraph discussing NP Anderson's opinion. *See Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1265 (11th Cir. 2024) ("We agree with our sister circuits that it is proper to read the ALJ's decision as a whole, and it would be needless formality to have the ALJ repeat substantially similar factual analyses in this circumstance.") (cleaned up). And this is not a case where the ALJ broadly rejected evidence, preventing this Court from concluding that the ALJ failed to consider R.T.B.'s medical condition as a whole. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

When the ALJ's decision is read as a whole, it is evident that the ALJ considered the relevant evidence and provided a sufficient rationale to support his conclusions. *See, e.g.*, *Raper*, 89 F.4th at 1265 (affirming when the ALJ "articulated good cause for discounting the treating physician's opinion because—when the ALJ's decision is read as a whole—it is clear why the ALJ found the opinion inconsistent with the record."). The ALJ did not err by considering NP Anderson's opinion in context of the entire record and weighing it accordingly. *See, e.g.*, *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1339 (11th Cir. 2021) (finding that substantial evidence supported the ALJ's decision to discount a physician's opinion where the medical opinion "conflicted with other evidence, including several examinations").

It is not this Court's role to "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the" ALJ. *Mitchell*, 771 F.3d at 782. Here, the ALJ applied the appropriate legal framework and adequately explained his supportability and consistency findings. The ALJ was not required to accept NP Anderson's opinion without question; rather, the ALJ retained the ability to weigh NP Anderson's opinion against other medical evidence. Because the ALJ's decision to assign

little persuasive value to NP Anderson's opinion was supported by substantial evidence in the record, affirmance is warranted. *See Epps v. Soc. Sec. Admin*, No. 22-13674, 2024 WL 20837, at *6 (11th Cir. Jan 2. 2024) (affirming and explaining that substantial evidence supported the ALJ's decision to discount physician's opinion because it was contradicted by other evidence in the record).

## VI. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1) The Commissioner's decision be **AFFIRMED**.

2) The Clerk of Court be directed to enter final judgment for the Commissioner under sentence four of 42 U.S.C. § 405(g).

At Pensacola, Florida, this 1st day of December 2025.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

**Notice to the Parties**

Objections must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.